Good morning, your honors. Thank you for allowing us to appear today to argue this very important case. I want to tell you that this case is incredibly important to Dr. and Mrs. Chen, whose lives have been completely turned upside down by this matter. They are here present in the courtroom here, on the front row here, to observe these proceedings. Dr. Chen is not a fraud. I think that the key to this case is summed up in the government's brief. Counsel, I was confused about something, and explain the nomenclature to me. Consultation reports, in my experience, are ordinarily where a doctor refers a patient to another doctor for a consultation. For example, a patient's leg hurts, the internal medicine specialist refers the doctor to an orthopedic medicine specialist, and the orthopedic surgeon sends back an opinion saying what's wrong with the patient's leg. There's another kind of referral that's made, and that's for a procedure. For example, that's what it looked like in this case. I want a catheter inserted in the heart. You're the person who specializes in inserting this type of catheter, a, well, I can't remember the name of it, GANS something, Swan-GANS catheter, insert the catheter. And when I've seen those before, that's not a consultation. That's a referral for a procedure. And I don't understand why the reports here after a procedure, the doctor who did the procedure always sends back a report saying I did the procedure, the patient tolerated it well, everything went fine, thank you for this interesting referral. That's the typical form of them. This looks to me like a procedure referral, and I don't see why there's a consultation report. Your Honor, there is a, you've hit the nail right on the head. That's exactly what this case is about, and there's a huge difference between what Dr. Chen does as a critical care physician who is caring for patients who are almost in every case, as his own testimony was, in a critical condition where they need constant care or immediate care from a doctor. Dr. Chen did not just simply go into an operating room where there were doctors present and perform a procedure. Well, no one's questioning that it's important. What I'm asking you about is why is there a consultation report as opposed to just a report on the procedure? In fact, although they're labeled consultation reports, they look like reports on the procedure. Your Honor, because Dr. Chen treated these patients as his own patients, and he came in and was requested to do so. When you get a procedure report, the specialist who performs the procedure for the generalist or the specialist in some other field says what he did and how it worked out. And Dr. Chen did that same thing. He reported back to the other doctors. But this is different from just, far different, far different from just coming in and doing the procedure and then leaving. That's not what Dr. Chen did. He came in. He consulted with the patients. He did the history that was necessary to do. He read their records. But that's not a consultation in medical parlance. Nobody would do a procedure without looking at the patient. And that doesn't mean it's a separate consultation, does it? Your Honor, the definition of the consultation, as Dr. Chen understood it, and what's important here is what Dr. Chen understood because he's not the government hasn't come here and said he billed for something he shouldn't have and he should have to pay that back. What the government has come here and said is that Dr. Chen is a fraud. Right. And what we have to do, because there's a jury verdict and also findings against him from the court, is look at the evidence in the light most favorable to the verdict. I understand. So we have to look at it with that perspective. Excuse my interruption, Your Honor. I understand that, Your Honor, that we come to this court with that jury determination having been made. But what Dr. Chen was doing was not simply performing procedures. Dr. Chen was, became, and all of the doctors, every one of the doctors who asked for Dr. Chen's services provided affidavits or in deposition testimony or testified at trial, that they were requesting for, from him, consultation with respect to the critically ill patients. Counsel, irrespective of the medical treatment, this is a Federal program. It's funded with government money. And very expressly, the agency took time to talk to Dr. Chen about his billing methodology. Now, from that time on, how can you say that it isn't deliberate? He was educated specifically as to how to bill for each patient that he treated. Your Honor, he was only three times there were questions raised. And each time those questions were raised, as it is clearly stated in the record, he was told that the method that he was using was correct. He was never educated in a different way. The government says that they sent out these newsletters and rulings. Right. Like Exhibit 33 that describes what has to happen for something to qualify as a consultation. And what it says is that there has to be documentation and there has to be something that is different from just the procedure, something that is separate and identifiable. And in Dr. Chen's mind, what he did with these critically ill patients was separately identifiable from the procedure that he was performing. Did this go on for some seven years and the agency never caught it? It's not – that's exactly how this case proceeded, Your Honor. This went on for seven years and the agency didn't catch it. That presumption is what underlies the government's entire case, is that they're just by looking at it that it's wrong. If you look at this, there was no evidence that any of this was wrongful. What Dr. Chen did was to actually perform procedures which, in his view and in the view of the doctors, all of the other doctors who testified were separately and properly billed. And three times the question was raised whether or not they were properly billed, and three times it was determined that it was. So Dr. Chen was billing exactly as he should have. I thought that the doctors who referred the patients to him did not request a consultation. You said a few moments ago that they did. Just refer me to an excerpts page or something so I can correct my misunderstanding. Well, Your Honor, the – all of the evidence was that the doctors would request his services. And that was part of the – Services is not consultation. There are different kinds of services. I understand, Your Honor. Dr. Chen understood those requests to be for a consultation. And every one of the doctors who made those requests also gave evidence that they understood those requests to be for a consultation. Well, there is also the Novak testimony, at least at a minimum, saying that these were not requests for consultation. And, again, because we're viewing this – the evidence in the light most favorable to the jury, I want the jury entitled to believe that testimony. And there may be other testimony, too. That's what I'm recalling at the moment, though. Because all Dr. Novak did was to look at six records, partial medical records, and reach the conclusion – That those were typical of the entire program. They were, too. Wait a minute. And that the evidence of each of the cases was admissible without specific identification or discussion of any variation between any claim. You said the six were exactly the same as the rest of them. And that was the stipulation, right? There was no such stipulation, Your Honor. Did you put on proof as to each claim? The government had to put on proof as to each claim, which they did not do. What my – The government had to prove its case. And as for whether the proof was persuasive, that would depend on the nature of the case. Now, no judge that I've ever seen would allow the government to take up the months or years that it would take to prove thousands of identical or materially similar claims. Is there any evidence that there was something about the claims that were proved in detail that makes them atypical or different from the other ones? The question is – It would be perfectly entitled. For example, you see this in – oh, we see it in criminal cases with large numbers of things, transactions, all the time, where the government just proves some. And the implication is that the rest were the same sort of thing. And then the defense sometimes puts on evidence showing, no, these were atypical. The government cherry-picked and is trying to imply something that isn't true. Did the defense put on evidence that there was anything atypical? Is there any evidence that the government's proofs were atypical? They were not atypical, Your Honor. But that gets to the evidence of whether the evidence they had in the six which they extrapolated was sufficient to prove – Well, that's – let me go back to my question, then, because I think it was also that they were procedures only, and therefore it was improper, and that it would have presumably known to be improper because to them it was obvious. Why isn't that sufficient evidence to support the jury's verdict, even though you disagree with it? Because, Your Honor, all that Steedman did and all that Novak did was to look at a few documents and say, well, this documentation isn't good enough. And if the documentation wasn't good enough, there's a mistake. As it says in the government's brief, the standard is the requisite intent is knowing presentation of what is known to be false, not an innocent mistake. All the government did was look at these documents and said, I don't think this document requests a consultation. But Dr. Chin believed that document. So when he said that he thought it was sufficient, the jury was required to believe him and could not make inferences from – and I would point out that Novak was also testifying based on what he'd heard in court, not just on those six records. But the point being, is the jury required to believe that he says he didn't know? No, Your Honor. But the government is required to put on something more than, I looked at a couple of documents, and I don't believe that this was a consultation. When my client has been charged with a quasi-crime and convicted of 3,544 counts of fraud based on the evidence that was put forward in this case, which was almost nothing, and my client did not do anything that was incorrect, if this were a civil case, and we were simply saying, should he or should he not have been paid for those consultations, we'd have a completely different case. But the case here is a fraud case, and they have to prove that he intended to knowingly charge for something that he should not have done. And the evidence from the government is that if he – he honestly believed, and so did all of the other doctors that he works with, believed that what he did was separate and distinct from the procedure, and it counted as a consultation. That's what he honestly believed, and he believes that to this date. What was separate and distinct? I read some of them, and it didn't look like there was any – it didn't look like, well, I evaluated, and here's my opinion, and here's how treatment ought to proceed in my view. This is the nature of the condition. It looked like they were just reports on how the procedure was performed and what the results were, whether the patient did well or there were complications. As I recall, the procedures were well done, and patients did fine, and that's what the report said. Dr. Chen is not just an anesthesiologist. He is a critical care physician. After he examined the patients, he proceeded based on his own medical determinations as to what should be done, and all of the doctors who testified said, we didn't say he had to do a particular procedure. He treated them. A patient has pain in the leg, gets referred for an ultrasound. The result comes back from the physician who supervised the ultrasound. No deep venous thrombosis, superficial venous thrombosis, deep venous thrombosis, something like that. And then the treating physician decides how to proceed on that. A procedure report is – these look like procedure reports that are just labeled consultation reports. I believe that the government thought that too, Your Honor, but Dr. Chen doesn't believe that, and Dr. Chen believed and still believes. The claim of what he believes, though, isn't binding on the trier of fact. It's not binding on the trier of fact, but they have to prove the element of false intent, and there is no evidence of that. But the trier of fact could do that by saying, gee, these don't look like consultation reports. I've seen plenty, or other witnesses have testified that they saw plenty, and this just isn't a consultation report, regardless of what it calls itself. The consultation report covered all of the three elements that the statute – the coding statute required, an examination and a history and to go forward with a plan, and that's what Dr. Chen did. And in each case, he was – he didn't see them in hospital rooms. He didn't see them in the emergency room like other anesthesiologists do. He was the doctor brought in to care for these patients who were critically ill, and he said those requests were typical of the requests that he got. And it was understood by him and on the affidavits of every doctor who requested it that they were not only requesting a procedure, but they were requesting a consultation. And when he would go and do that consultation – And if so, just tell me where to look in the excerpts. They're too voluminous, and I'd like to read it. In the motion for summary judgment, which is the first document – I don't care about trial. I don't care about motion for summary judgment. And at trial, two doctors – two doctors testified. And to their understanding of – Volume 11, I'm being told. At the test – Dr. Vorha testified. I'll take a look, if you can be specific. The excerpts were too voluminous for me to use. Dr. Vorha, and he's in the Fifth Day of Trial Transcripts, Volume 5, and was the first one to testify. And Dr. Edward Diamond testified, and that's also in the transcript, Volume 5. Thank you, counsel. You've exceeded your time, but we'll give you a little bit back for rebuttal, since we used up quite a bit with questions. Thank you, Your Honors. Counsel, can you tell me how we'd have any confidence that each of the claims that were stipulated are precisely the same in effect? We have basically Dr. Chin's own testimony. Could you introduce yourself for our audio record? Yes. My name is Michael Robinson. Good morning, Your Honors. I'm with the Department of Justice, and I represent the United States. Now you can answer Judge Beezer's question in full. Thank you. Yes. Dr. Chin admitted that between 1999 and 2006, he submitted 3,544 claims for a consultation on the same day that he inserted a catheter or a line placement. He testified that every time, basically, he billed Medicare for a line placement or the insertion of a catheter, it was his practice to bill a consultation code at the same time, basically generally at the highest amounts. He said that it was his practice to bill a consultation every time that he did a catheter, whether or not the ordering physician asked for a consultation or not. He treated them essentially as the same. Do the government records reflect Dr. Chin's procedure in each of these claims? He made a claim against the government. He made a claim. And he paid them after an audit, right? I'm sorry. I'm not quite sure I understand that. How did Dr. Chin get paid if the government didn't audit the claims over seven years? That's the point of bringing the lawsuit to honor. The audit occurred and it was determined that at that point that he was improperly billing, double billing for a consultation at the same time as he was for an insertion of a catheter. It took the government seven years to find that out? Your Honor, probably part of the problem was this, is that it is Medicare policy that essentially every time you're asked to do a surgical procedure, a minor surgical procedure, you are not, you are only going to get reimbursement for that procedure because that procedure also includes the general evaluation and management care that occurs when you do that procedure. It's the Medicare policy, Medicare, though, allows a doctor, I mean, and if a doctor submits a consultation request and a procedure request at the same time, it goes into a computer, that computer will spit that out unless the doctor also includes a specific modifier that says I'm entitled because of the special circumstances of this case to get a consultation at the same time that I'm doing a procedure, for example, modifier 25. That goes in and it doesn't spit it out. So it did take a while. I don't know why. It took seven years. But you have trained people at the time the payment is made to the doctor that has a chance to review what the doctor has submitted, ask questions, and, in fact, on a couple of occasions, they apparently did. And it just kept going on and the government didn't do a darn thing about it. Well, the government once ---- All I'm saying is I'm not satisfied that each case is exactly identical to the sample in one way or another. Well ---- And that you have ---- that the government has proved its case. At trial, the government counsel went through ---- started with a list of doctors who had requested the insertion of catheters. We have between 1999 and 2004. Do you have the doctor's medical record on each one of those? No. But what we do have is we do have sample orders that requested the insertion of a catheter. Those orders do not qualify as requests for consultations. Then why weren't they rejected at the time the payment was being made? That's because, as I said, there are certain times in which a doctor may bill for a consultation with the procedure. You're saying it's not categorically prohibited? It's not categorically prohibited. And if you ---- and Medicare tells you when it is not categorically prohibited, you can do so by billing this code. But guidance ---- I tried to figure out those codes and procedures, and it was pretty hard to understand. And I can't help but wonder whether there might be ratification. A doctor might think, gee, I think this is the way you're supposed to do it. I can't understand this stuff. And then he sends in the bills, and they get approved and paid. And maybe that would indicate to a doctor that what he's doing is okay, unless some Medicare representative rejects his bills and tells him it's not okay. How can we exclude that on this record? For two reasons, Your Honor. I think that we start with the basic Medicare policy, which in the Medicaid regulation says that for minor surgeries and endoscopic procedures, no payment generally will be made for a visit on the same day, in addition to the surgical procedure or endoscopy procedure, unless a documented, separately identifiable service is furnished. So what we have is we start with a policy that when you are going to perform a minor surgical procedure, you are not going to get the typical what they call EM, which is evaluation and management. And that's not the government's understanding that matters. Ordinarily, you'd say his understanding, if he's reasonable, has to be the government's understanding if you can understand what the government says. Your Honor, that is true, except for the fact that, given the fact that this is the baseline, this is the typical situation. And Dr. Chen admitted that in 100 percent of the cases, that when he submitted a request for reimbursement for line placement, he also charged for consultation. He also, it seemed to me, I'm looking at some excerpts from his testimony, it seems to me that he also admitted that the specific cases that were discussed with him on cross-examination were typical of all 3,500 cases. Yes, Your Honor. And that he And that's so that they were in, he viewed them as a lump, as I understood it, where he says these are typical practices, and then he says that he always billed for both. Your practice every time was to have a consultation code that's correct. That's exactly. And that is more than sufficient to support the jury's verdict in this case. That qualifies as substantial evidence in support of that, the jury's finding. I would guess that the great majority of doctors max out their potential billing on Medicare because the reimbursement rates are so low. In my town, and I expect most towns, most of the doctors now won't accept Medicare patients because the reimbursement rates are too low. So I would expect that most of the doctors max out their potential billings in order to make it possible to take Medicare patients. That would suggest that unless a doctor is educated plainly enough to know that he's doing something wrong, all he's doing is what's typical of the profession. Your Honor, I think that it is clear under the law that a doctor is required to find out what the proper billing procedure must be. It's not fraud if he's just not diligent. It's only fraud if he's on purpose ripping off the government. It is fraud, but it doesn't require ---- Did anyone tell the doctor, we're rejecting some bills and you can't bill them this way? Well, I don't know if ---- You audit the bills, don't you? I'm sorry? You don't get the record, but you do audit the bill. Your Honor, it is the doctor's obligation to find out the proper procedure. In this case ---- The government has no obligation to stop it when it knows it's wrong. When we ---- when it's discovered. And, Your Honor, that's part of the reason why this is the ---- Your Honor, I can't explain why it took so long to discover this, but it probably ---- Was it the case that it took seven years because as far as the government was concerned, this was fine, this is what everybody does, and then they had a change of policy or a budget problem or something? No, Your Honor, it wasn't that at all. It was simply to enforce the Medicare policy that was available both under the regulations and under the guidance that is provided by doctors. But it is difficult to find out, particularly using a computer system that will allow in certain circumstances for a billing or consultation along with a procedure. It's just difficult. The codes were there. It's on the face of the claim. I'm sorry? The codes were on the face of the claim. You knew that you were paying the high price. That's obvious just from looking at the claim form. Yes, but it's ---- but we're working backward from something that we now know and that we've determined that in 100 percent of the cases, Dr. Chen bills for a consultation every time he did a placement. Your Honor, that ---- why it took the government so long to discover it is ---- It's a civil case, essentially, and you contributed to the neglect. Your Honor, I apologize for that, but here the central question is whether there is sufficient evidence to support the jury's verdict and the government believes that there is more than adequate evidence in the record to support that. It has to be intentional fraud, right? Not just understanding of the codes. No, it doesn't have to be specific intent to defraud. It has to be either intent to defraud, deliberate ignorance of the requirements of the law, or a reckless disregard for those. And we believe that given the fact that there is 100 percent correlation between the billing for insertion of a line ---- I would say I'm probably somewhat ignorant of the requirements, but it's not deliberate ignorance because I tried to understand them. They're just hard to understand. I would think that would be true. I think the guidance is sufficiently clear to say that when you are doing a procedure, a minor surgical procedure like the insertion of a catheter, that you are not to bill for consultation, and that for consultation, as you described it, the consultation requires not only that it be documented in the request by the requesting physician for advice or opinion about the future treatment of the patient, but that's not ---- that didn't satisfy any of the requirements in the orders that Dr. Chen received. Was there ever any individualized guidance given to him, or is the guidance you're relying on just the general guidance? The guidance we're relying on primarily is guidance provided, the general public, either in the brochures, but also in the global surgery policy that Medicare puts out. It is certainly the doctor's responsibility to find out what the appropriate procedure and billing procedures are. Has the agency published it as a rule? The agency has certain regulations. It has, and we cite a final regulation in the front of our brief here that explains this at 56 Federal Register. For the whole period that we were at issue here? For the period that we're talking about. Thank you. Thank you. You've exceeded your time, but we'll give you one minute for rebuttal. Dr. Chen testified that the requests were typical of the requests that he always saw, and he considered them to be a request for consultation. That's what he testified to. Not that he was double billing, and there was no double billing here. Dr. Chen's what he did fell within the guidelines that they're talking about. He did not just do minor surgical procedures. All of his patients were critically ill and had to have critical care far beyond, and there was testimony to that effect. What he did was far beyond what would be involved in just simply doing the minor surgery to place the catheters or to place the swan scans or all of the other things. He did testify that in every instance he used both codes. He testified that he was. I'm looking at volume. I don't know what it is, pages 78 and 79. Yes. Sorry, I don't know which volume it is. Yes. Because he considered each of the patients, the only patients he had were in that critical care. The answer is yes. Yes. He did both. So he had to understand or look up the regulations, at least to the extent that he was finding out what codes he could use to charge for these things, which means that he was in the neighborhood of instructions for how to use these codes. And he fell specifically and completely within those instructions, as I have put forth in my brief, if you read it. What the government keeps saying the instructions are are not what the instructions are. If you look at those instructions, what he did falls within it, and he believed that he did. He believed that he did. Not only was it ratified, but three times billings were challenged, and each of those three times when the records were provided, the government came back and said, yes, you are billing correctly and you are using the correct modifier. And so he continued to do that. Thank you, counsel. I'm sorry. Go ahead.  In the jury instructions, was the jury specifically instructed with respect to the penalty on each claim that it was imposed by the government on top of the actual government loss? I do not believe the jury was instructed on penalties other than they were just supposed to find they were instructed to find the total amount, which they did, which was $420,000 government. The judge then trebled that and added the penalties, and the jury was not instructed on that. The trebling is as a matter of law, right? Correct. If it's $1, it has to be $3 and so forth. That's correct. So that's not a jury decision normally. Right. It was trebled by the court as a matter of law, and then the penalties were imposed by the court. The jury received no instruction concerning it. The jury was not instructed regarding the penalties. Okay. Thank you, counsel. We appreciate the arguments of both counsel. It was very helpful. The case just argued is submitted.
judges: Beezer, Kleinfeld, Graber